395 P.2d 824

**Frank SESSING, Plaintiff-Appellant
and Cross-Appellee,**

**v.**

**YATES DRILLING COMPANY, Employer,
and the Employer's Group, Insurer, De-
fendants-Appellees and Cross-Appellants.**

**No. 7469.**

Supreme Court of New Mexico.

Oct. 13, 1964.

Leonard T. May, Carlsbad, for appellant.

Girand, Cowan & Reese, Hobbs, for appellees.

MOISE, Justice.

This appeal is from a denial of a workmen's compensation claim. A cross appeal has been filed attacking a finding of fact made by the trial court.

At the time of the injury, plaintiff was employed by defendant on one of its drilling rigs in Eddy County. While laying down

drill pipe in preparation for moving the drill rig, a cable clamp came loose, allowing a pulley to hit plaintiff over the left eye. The hook attached to the pulley struck the left eye. Because of the blow, plaintiff was unconscious for a short time. He was given first aid at the drilling site, and later treated by a doctor in Lovington, New Mexico. Plaintiff missed only two or three days work because of the accident.

Presented for review is the trial court's finding of fact number 6. We set it out in full:

"6. Prior to plaintiff's injury he had an uncorrected vision in his left eye of 20/40, correctable to 20/20, which was determined by Dr. Clay Gwinn of Carlsbad, New Mexico, who had examined plaintiff in 1960. Plaintiff now has an uncorrected vision of 20/40, correctable to 20/30. His uncorrected vision is the same now as it was prior to his injury, namely 20/40. As a result of the accident plaintiff has lost the ability to correct his left eye by the use of corrective lens from 20/20 to 20/30 which is not deemed compensable."

The medical expert, Dr. Gwinn, called on behalf of plaintiff, testified that the plaintiff suffered a 10% disability in his loss of vision.

Plaintiff contends that § 59–10–18.4(A)(41) and (B), N.M.S.A.1953, allows compensation for the loss of corrected vision. Defendant, on the other hand, contends the statute permits compensation only for the loss of natural or uncorrected vision.

The applicable sections of the New Mexico Statutes Annotated (1953) are:

§ 59–10–18.4 "A. For disability resulting from an accidental injury to specific body members including the loss or loss of use thereof, the workman shall receive sixty per cent [60%] of his average weekly earnings not to exceed a maximum compensation of thirty-eight dollars ($38.00) a week for the following periods:

\*　　\*　　\*　　\*　　\*　　\*

"(41) Total blindness of one eye . . . . . . . . . . 120 weeks

\*　　\*　　\*　　\*　　\*　　\*

"B. For a partial loss of use of one of the body members or physical functions listed in subparagraph A of this section, the workman shall receive compensation computed on the basis of the degree of such partial loss of use, payable for the number of weeks applicable to total loss or loss of use of that body member or physical function."

§ 59–10–12.1 "\* \* \* A. 'Disability' means a decrease of wage earning ability due to a workman's injury suffered by accident arising out of and in the course of his employment."

Decisions from other jurisdictions on this point are not lacking. See 8 A.L.R. 1324; 24 A.L.R. 1466; 73 A.L.R. 706; 99 A.L.R. 1498; 142 A.L.R. 822. There is no clear weight of authority on the question of whether corrected or uncorrected vision is to be used in determining the amount of compensation award. Compare Walsh Const. Co. v. London, 195 Va. 810, 80 S.E. 2d 524, with Western Contracting Corp. v. Industrial Comm., 15 Utah 2d 208, 390 P. 2d 125.

It is not necessary to decide that corrected or uncorrected vision must exclusively be used to determine disability. We note the observation made by the Illinois Supreme Court in Lambert v. Industrial Commission, 411 Ill. 593, 104 N.E.2d 783, in discussing this point:

> "The real difficulty, and one of the causes of the lack of harmony in the authorities, lies in the fact that neither rule is adequate to cover all cases. If naked vision, alone, is considered, the worker with corrected vision is not adequately protected, and if corrected vision, alone, is considered, the worker with uncorrected vision is not fully protected." 411 Ill. at 604, 104 N.E. 2d at 788.

It would be difficult to announce, in the light of the above, a hard and fast rule to be used when there is a visual impairment, whether it be to corrected or uncorrected vision.

We are impressed that our problem is made more difficult than would otherwise be necessary, when we attempt a legalistic analysis of the language of the statute, and feel strongly that the concept whereby loss or decrease in earnings is used as the exclusive guide leads to some rather incongruous and strange results. To illustrate— if we agree with plaintiff in this case that compensation for injury to or loss of a scheduled member must be determined in the light of the situation as it will exist after providing glasses, we would thereby in effect be holding that the compensation for loss of a limb would be something different than is stated in the section if a prosthetic device of some kind required to be furnished under § 59–10–19.1(E) would materially decrease the loss suffered. Nothing in the statute indicates such a result was intended. The provisions of § 59–10–18.4, supra, were intended to provide a standard generally applicable when a workman lost a scheduled member or suffered injury thereto subject to certain qualifications stated in § 59–10–18.4(B), (C) and (D), N.M.S.A.1953. In this connection § 59– 10–18.4(B) is of particular interest. It reads:

> "For a partial loss of use of one of the body members or physical functions listed in subparagraph A of this sec-

tion, the workman shall receive compensation computed on the basis of the degree of such partial loss of use, payable for the number of weeks applicable to total loss or loss of use of that body member or physical function."

It will be noted that it provides that where there is partial loss of use, compensation is to be computed based on the degree of such loss. It does not state if the partial loss of use to be considered is before or after correction with glasses or other prosthetic device. In the recent case of Mascarenas v. Kennedy, N.M., 397 P.2d 312, filed July 23, 1964, we had the following to say concerning the nature and purpose of our workmen's compensation act:

"We are firmly committed to the doctrine that the Workmen's Compensation Act is remedial legislation and must be liberally construed to effect its purpose. Montell v. Orndorff, 67 N.M. 156, 353 P.2d 680; Armijo v. Middle Rio Grande Conservancy District, 59 N.M. 231, 282 P.2d 712; Wilson v. Rowan Drilling Co., 55 N.M. 81, 227 P.2d 365; Lipe v. Bradbury, 49 N.M. 4, 154 P.2d 1000; Stevenson v. Lee Moor Contracting Co., 45 N.M. 354, 115 P.2d 342. * * *"

In line with this language we perceive that if as a result of an accidental injury partial loss of use of a specific body member or physical function covered by §

59–10–18.4(A), supra, is suffered by a workman, the compensation therefor is to be computed as provided in § 59–10–18.4(B), supra, and § 59–10–12.1, N.M.S.A., defining "disability" is not applicable. We do not consider whether this right varies according to corrective measures which may be available. If plaintiff was injured in the course of his employment, and as a result one eye cannot be corrected by glasses as well after the injury as before, he is entitled to compensation whether or not there is a change in his vision without glasses. How can it be said he has not lost partial use of that eye or of its function? By holding that compensation is payable under the circumstances of this case, we do not want to be understood as inferring that compensation is not payable when there is an eye injury which can be corrected with glasses. That question is not before us.

It follows from the foregoing that the court erred in dismissing plaintiff's complaint unless defendant's point asserted as a cross appeal, to the effect that the court's finding number 6, insofar as it determined that the eye condition resulted as a natural and direct result of an accident, is not supported by proof as required by § 59–10–13.3 (B), which reads:

"In all cases where the defendants deny that an alleged disability is a natural and direct result of the accident, the workman must establish that causal connection as a medical probability by

**554**

expert medical testimony. No award of compensation shall be based on speculation or on expert testimony that as a medical possibility the causal connection exists."

While denominated a cross appeal, it does not appear that the cross appeal was timely taken, as required by Supreme Court Rule 7(2). The situation is similar to that present in Frederick v. Younger Van Lines, 74 N.M. 320, 393 P.2d 438, decided June 29, 1964, and although we do not consider the question as being raised by cross appeal, as was true in Frederick, it may be considered under our rule 17(2) (§ 21–2–1(17) (2), N.M.S.A.1953) which we now proceed to do.

It is extremely difficult to determine with any degree of certainty from the transcript whether Dr. Gwinn intended to testify that the disability which he found in the eye was causally connected with the accident as a medical probability as required by the section of the statute quoted.

█ █ It is a well-established rule that the evidence must be considered in the light most favorable to support the findings made by the trial court. Huston v. Huston, 56 N.M. 203, 242 P.2d 495; Edwards v. Peterson, 61 N.M. 104, 295 P.2d 858; Montano v. Saavedra, 70 N.M. 332, 373 P.2d 824. Although there are inconsistencies, we will not reweigh evidence so long as there is substantial support therein for

the findings of fact. Kutz Canon Oil & Gas Co. v. Harr, 56 N.M. 358, 244 P.2d 522; Addison v. Tessier, 65 N.M. 222, 335 P.2d 554.

█ The trial judge was present when the testimony was taken. Evidently he knew what the witness was trying to convey, or what counsel and court were trying to determine. On the cold record before us, we cannot say with any certainty what conclusion should be drawn from the doctor's testimony. This being the case, and considering the testimony in a light most favorable to support the findings, we are not in a position to say that the finding of plaintiff's loss of corrected vision as a result of the accident was not supported by substantial evidence.

What was said in this regard in Lucero v. C. R. Davis Contracting Co., 71 N.M. 11, 375 P.2d 327, is particularly appropriate here:

"In reviewing evidence on appeal, all disputed facts must be resolved in favor of the appellee and all reasonable inferences drawn from the evidence should be indulged in to support the judgment. The evidence must be viewed most favorable to the judgment. Totah Drilling Co. v. Abraham, 64 N.M. 380, 328 P.2d 1083; Martinez v. Archuleta, 64 N.M. 196, 326 P.2d 1082; Waters v. Blocksom, 57 N.M. 368, 258 P.2d 1135."

The matter complained of by defendant is without merit. The judgment of dismissal is reversed and the cause remanded to the district court with directions to reinstate it on the docket and proceed in a manner consistent herewith.

It is so ordered.

COMPTON, C. J., and .CHAVEZ, J., concur.